UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MALGORZATA K., | ) |
| Plaintiff, | ) No. 23-cv-16194 |
| v. | ) Magistrate Judge Keri L. Holleb Hotaling |
| LELAND DUDEK, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Malgorzata K.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") ("SSA") denying her disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment (Dkt. 15) is DENIED and Defendant's motion for summary judgment (Dkt. 20) is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

**A.   History**

Plaintiff applied for disability insurance benefits in August 2016 due to bipolar disorder, depression, anxiety, migraines, and epicondylitis of the right shoulder. (Administrative Record ("R.") at 75.) On November 2, 2018, Administrative Law Judge ("ALJ") William Mackowiak issued a decision denying Plaintiff's application for disability benefits. (R. 15-24.) Pertinent here, ALJ Mackowiak determined Plaintiff was capable of performing "at most, sedentary work." (R. 19.) Plaintiff, born in 1969, was 46 years old at the time of her alleged onset date, and was 49 years old when ALJ Mackowiak issued his decision. (R. 24, 74.) Plaintiff turned 50 three months after ALJ

---

[1]   In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).
[2]   Plaintiff has filed a Memorandum in Support of Reversing or Remanding Commissioner's Decision [Dkt. 15], which the Court construes as a motion for summary judgment.

Mackowiak's decision, nine months after the Appeals Council's ("AC") affirmation of that decision, and almost three years prior to her date last insured. (*See* R. 74.)

On June 23, 2022, then-Magistrate Judge Sunil R. Harjani, after an articulation of how "the ALJ's categorization of [Plaintiff's] age is important to the determination of disability" (R. 3340), remanded this matter back to the Social Security Administration for further consideration of the borderline age issue. (R. 3333-3340.) In particular, at the time of the ALJ Mackowiak's opinion, Plaintiff was a "[y]ounger individual" who was mere months from being classified as a "[p]erson closely approaching advanced age," 20 C.F.R. § 404.1563(c)-(d), yet despite Plaintiff's "borderline" age, ALJ Mackowiack's decision did not articulate whether he considered the Medical Vocational Guideline pertaining to individuals closely approaching advanced age. (R. 15-24.) Because that table could yield different results for one "closely approaching advanced age" than a "younger individual," Judge Harjani determined the ALJ needed to articulate that analysis and thusly remanded Plaintiff's case. (R. 3333-3340); *see also*, *McKay v. Colvin*, No. 15-cv-9522, 2016 WL 6432582, at *5 (N.D. Ill. Oct. 31, 2016) ("[j]udges in this district generally require some explanation of the ALJ's thought process regarding application of age categories in borderline cases."). The AC then vacated the Commissioner's decision and remanded the matter for further proceedings consistent with Judge Harjani's order. (R. 3350.)

On remand, a new ALJ was assigned. The new ALJ, Edward Studzinski, held another Administrative Hearing (R. 3279-3311), after which he issued a September 16, 2023 decision again finding Plaintiff not disabled (R. 3250-3270). ALJ Studzinski employed the familiar five step analysis to determine, in key part, the following: Plaintiff's disability onset was January 21, 2016, and her date last insured was December 31, 2021 (R. 3253); Plaintiff had the severe impairments of severe migraines, a right upper extremity musculoskeletal problem, fibromyalgia, bipolar mixed disorder, depression, and anxiety (*id*.); Plaintiff's impairments did not meet or equal a Listing

(R. 3253-56); Plaintiff had the residual functional capacity ("RFC") to perform light work with additional limitations (R. 3256-68); while Plaintiff was unable to perform her past relevant work, there were a significant number of jobs in the national economy she could perform (R. 3268-69); and, thus, Plaintiff was not disabled (R. 3270). ALJ Studzinski's September 16, 2023 decision is the final decision of the Commissioner; Plaintiff seeks review (Dkt. 1) of the same under 42 U.S.C.A. § 405(g).

B.     **Social Security Regulations and Standard of Review**

According to the Social Security Act (the "Act"), a person is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1). To determine whether an individual is disabled, an ALJ must apply a sequential five-step test. *See* 20 C.F.R. § 404.1520(a); *Langley v. O'Malley*, No. 22-cv-3008, 2024 WL 3649021, at *2 (7th Cir. Aug. 5, 2024) (citation omitted). The burden of proof is on the claimant for the first four steps, but on the agency at step five. *Langley*, 2024 WL 3649021, at *3; *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022). The Act requires all applicants to prove they are disabled as of their date last insured to be eligible for benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). If there is substantial evidence in support of the determination, the Court must affirm even if "reasonable minds could differ." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2018) (citation and quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "the

3

threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (citation and quotation marks omitted). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and their conclusion. *Hess*, 92 F.4th at 676. Yet an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054 (internal signals and citations omitted). Additionally, "[w]hen reviewing a disability decision for substantial evidence, [the Court] will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052-53.

**C.  Discussion**

Plaintiff first argues that by increasing Plaintiff's RFC from sedentary work to light work upon remand, the new ALJ "evaded compliance" with the Judge Harjani's remand order requiring the ALJ to address any potential borderline age situation. Plaintiff also insists, in light of the combined effects of her impairments, the ALJ made an unsupported finding that Plaintiff could perform simple tasks. The Court disagrees and addresses these contentions in turn.

    **1.  The ALJ Did Not Evade the Court's Directives on Remand Concerning Borderline Age; The ALJ Provided Substantial Evidence for his Light Work RFC Finding**

Plaintiff first argues that the ALJ "evaded compliance," *i.e.*, failed to comply, with Judge

4

Harjani's remand order (and, necessarily, with the AC's remand order). This argument requires some unpacking. Although in 2018 ALJ Mackowiak found Plaintiff could perform only sedentary work, the 2023 remand judge, ALJ Studzinski, found Plaintiff could perform light work with limitations not relevant here. This change in exertional level had a broader implication. As Judge Harjani explained, for a person limited to sedentary work like Plaintiff under ALJ Mackowiak's decision, the Medical Vocational Guideline could yield a different result for a person closely approaching advanced age (disabled) than for a younger individual (not disabled). (R. 3340; *see also*, *Hearings, Appeals, and Litigation Law Manual* ("HALLEX")³ I-2-2-42(A) (in a "borderline age" situation, an ALJ "will consider whether to use the higher age category after evaluating the overall impact of all the factors of the case") (last updated Mar 25, 2016), https://www.ssa.gov/OP_Home/hallex/I-02/I-2-2-42.html (last visited Mar 18, 2025). But "if using the higher age category does not affect the outcome of the decision, a borderline age situation does not exist, and the ALJ will use the claimant's chronological age to adjudicate the case." *Id*. at I-2-2-42(B)(2).

Specifically, here is how the manual last counseled ALJs to operate in potential borderline age cases like Plaintiff's:

> When determining disability, the Social Security Administration (SSA) will use each of the age categories applicable to a claimant during the period for which SSA is determining whether the claimant is disabled. SSA will not apply the age categories mechanically in a borderline age situation.
>
> …
>
> If application of a claimant's chronological age results in a decision that the claimant is not disabled, an ALJ will identify whether the claim may involve a borderline age situation by applying a two-part test:
>
> - Is the claimant's age within a few days or a few months of the next higher age category?

---

³ According to the HALLEX, that manual is meant to provide "guiding principles, procedural guidance, and information" to ALJs. HALLEX I-1-0-1 (last updated Mar 3, 2011), https://www.ssa.gov/OP_Home/hallex/I 01/I-1-0 1.html (last visited Mar. 17, 2025). But "[t]he Seventh Circuit has not determined whether the HALLEX is binding on the Commissioner like a Social Security Ruling is, and the circuits that have addressed it are split on the question." *Figueroa v. Astrue*, 848 F. Supp. 2d 894, n.4 (N.D. Ill. 2012) (citations omitted) (collecting cases).

5

- Will the higher age category result in a decision of "disabled" instead of "not disabled"?

If the answer to one or both parts of the test is "no," a borderline age situation either does not exist or would not affect the outcome of the decision. The ALJ will then use the claimant's chronological age.

If the answer to both parts of the test is "yes," a borderline age situation exists, and the ALJ must decide whether it is more appropriate to use the claimant's chronological age or the higher age category.

…

*Id*. at I-2-2-42(A)-(B).

Additionally pertinent here, pursuant to the HALLEX, "[i]f the Appeals Council remands a case to the hearing level after a court remand, it generally vacates the entire [ALJ] decision, and the ALJ must consider all pertinent issues *de novo*." HALLEX I-2-8-18, https://www.ssa.gov/ OP_Home/hallex/I-02/I-2-8-18.html (last visited March 12, 2025). "A *de novo* decision is an independent determination made without deference to prior findings." *Anthony L. v. Berryhill*, No. 17-cv-6608, 2019 WL 1354419, at *7 (N.D. Ill. Mar. 26, 2019). Here, as is the SSA's standard practice, following Judge Harjani's remand, the AC vacated ALJ Mackowiak's October 2018 decision and remanded the matter for further administrative proceedings. (R 3350.) Upon remand, Plaintiff's case was assigned to a new ALJ, Edward Studzinski. In his *de novo* decision upon remand, ALJ Studzinski was not required to adopt the same RFC as before (regardless of whether it was his own or that of another ALJ). *See Rienas v. Kijakazi*, No. 22-cv-863, 2023 WL 6295391 at *9-11 (E.D. Wis. Sept. 27, 2023) (finding no error where ALJ changed his finding regarding claimant's mental impairments following remand because ALJ "was not bound by his previous decision").

Additionally with respect to previously remanded decisions, courts have generally held that an ALJ's failure to comply with a remand order (as Plaintiff alleges happened here) does not, by itself, require reversal. *Sullivan v. Kijakazi*, No. 21-c-568, 2022 WL 19004336, at *9 (E.D. Wis.

Sept. 19, 2022) (collecting cases); *see also Poyck v. Astrue*, 414 Fed. Appx. 859, 861 (7th Cir. 2011) ("The question whether the ALJ complied with the AC's remand order is not, in the final analysis, of independent importance. The only question properly before us is whether the ALJ's decision (which the Appeals Council chose to leave undisturbed) is supported by substantial evidence."). *But see Moore v. Colvin*, No. 1:12-cv-00739-MJD, 2013 WL 4584618, at *5-6 (S.D. Ind. Aug. 28, 2013) (suggesting that failure to take action ordered by the AC constitutes legal error).

Here, Plaintiff alleges that the change in the RFC from the first decision to the second decision is "puzzling" because the second decision *added* fibromyalgia to the list of Plaintiff's severe impairments but also *increased* Plaintiff's RFC from sedentary work to light work, a change which Plaintiff deems "conveniently tailored to avoid the borderline age situation." (Dkt. 15 at 10-11.) Plaintiff insists the altered exertional level finding was a machination to sidestep Judge Harjani's remand directive to address the impact of her borderline age on the sedentary work findings, but that argument relies upon faulty premises – that the 2023 remand ALJ was bound by the 2018 ALJ's factual findings and that the 2023 ALJ did not follow the remand directive. Neither is true.

While Plaintiff's "failure to address the remand order" argument is facially appealing, ALJ Studzinski's *de novo* analysis and decision moots the issue here. It is not as if this matter had been remanded multiple times to the same ALJ who consistently committed errors in his decision. *See, e.g., Larsen*, 2023 WL 9788401, at *11. Rather, a *new* ALJ, ALJ Studzinski, conducted an independent, *de novo* review of Plaintiff's case and determined, with accompanying explanation, that Plaintiff was able to sustain light work. Then, when this new ALJ turned to the remand order to ensure he met its directives, it turned out the light exertional work designation eliminated any potential borderline age situation, which ALJ Studzinski appropriately noted in his decision, thus addressing the issue. (R. 3268.) The Court will not overturn ALJ Studzinski's decision for his

7

treatment of the borderline age issue.

The question, therefore, is whether the ALJ erred in finding Plaintiff could perform light work with limitations. Consequently, the Court also addresses Plaintiff's contention that ALJ Studzinski "provided no explanation" for his RFC conclusion. (Dkt. 15 at 10-12.) The Court finds the opposite – ALJ Studzinski's findings were supported by substantial evidence in this regard.

ALJ Studzinski first considered Plaintiff's subjective allegations regarding her physical limitations, including her June 2018 Administrative Hearing testimony that she experienced migraines several times per month and pain throughout her body. (R. 3257.) The ALJ also discussed Plaintiff's allegations from the second Administrative Hearing in September 2023, including that she had pain in her neck, back, and hands, could occasionally walk up to two blocks, used a cane, and experienced migraines. (*Id.*) However, after considering the entire record, the ALJ ultimately concluded Plaintiff's statements concerning the extent of her allegations were not fully consistent with the record evidence, including her treatment history, her objective examinations, and her documented activities of daily living. (R. 3258.)

The ALJ spent the remainder of his decision supporting this conclusion and explaining his finding that Plaintiff could perform a reduced range of light exertional work. The ALJ detailed the relevant evidence of Plaintiff's fibromyalgia, acknowledging the occasional positive findings of tenderness and formal diagnosis of this condition in 2017. (R 3258-60 (citing R. 436, 444, 875, 1140, 1178, 1820, 3171, 4817)).) But the ALJ also contrasted these findings with Plaintiff's normal presentation at medical appointments, explaining that she often had normal joints, range of motion, gait, and strength throughout the relevant period (R. 3258-60 (citing, *e.g.*, R. 436, 444, 1140, 1820, 3132, 3609, 3612, 3616, 3619, 4358, 4371, 4494, 4327, 4582, 4588, 4641, 4650, 4941, 4999, 5043, 5134)), which was entirely proper. *See Ellen B. v. Saul*, No. 19-cv-2389, 2020 WL 1912228, at *5 (N.D. Ill. Apr. 20, 2020) (ALJ properly discounted allegations of debilitating fibromyalgia where

8

claimant had normal examination findings that undercut her allegations). The ALJ considered and discussed at length Plaintiff's conservative treatment history, noting that she underwent physical therapy from January 2016 through April 2016 and October 2016 through December 2016 which resulted in a significant improvement in her pain and her ability to perform daily activities. (R. 3258-59 (citing R. 329-79, 617-86, 1508).) The ALJ also noted Plaintiff's course of physical therapy from June 2019 through July 2019 and again from September 2019 through November 2019, where she made significant gains in reduction of pain, had no significant abnormality on examination, and reported she was able to perform her daily activities. (R. 3259 (citing R. 4106-08, 4111-14).) The ALJ mentioned Plaintiff took various fibromyalgia medications, with varying levels of success, including Keppra which she reported helped with her joint pain. (R. 3259-60 (citing 446, 4766)); *see David R. v. Saul*, No. 19-cv-2666, 2020 WL 6565244, at *5 (N.D. Ill. Nov. 9, 2020) (no cherry-picking found where ALJ considered adverse evidence but cited to evidence showing plaintiff's conditions were controlled with medications and improved with treatment). The ALJ also contrasted Plaintiff's reports of limitations with her extensive daily activities like socializing with friends, attending church, going to yoga, attending choir practice, dining out with friends, outdoor walking, attending aquatics therapy, going to the library, and going on vacation. (R. 3257-68; *see also*, *e.g.*, R. 502, 2803, 2862, 2924, 2965, 2989, 3035.)

Additionally, the ALJ considered the prior administrative medical findings indicating Plaintiff could perform at least the exertional requirements of light work. He afforded no weight to the initial-level-of-review opinions of Vidya Madala, M.D., determining that her conclusion that Plaintiff did not have severe physical impairments was contradicted by the evidence. (R. 3264 (citing R. 78).) On the other hand, he afforded "good weight" to the reconsideration-level opinion of State agency medical consultant Reynaldo Gotanco, M.D., finding his opinion that Plaintiff could perform a range of medium work supported by his discussion of the record evidence and consistent

9

with the evidence available at the time he rendered his findings. (R. 3263 (citing R. 96-97).) But the ALJ explained that additional evidence – including Plaintiff's physical therapy appointments – supported more restrictive exertional limitations than Dr. Gotanco found. Thus, ALJ Studzinski limited Plaintiff to only light exertional work with various additional postural, manipulative, and environmental limitations. (R 3264.)

The ALJ then tied this record evidence to each specific physical limitation outlined in his RFC finding. The ALJ explained that despite the previous decision limiting plaintiff to sedentary work, "[t]he medical evidence does not demonstrate a significant limitation in [Plaintiff's] ability to stand or walk during an eight-hour workday." (R. 3260.) The ALJ acknowledged the waxing and waning nature of fibromyalgia symptoms but noted that "the record does not demonstrate significant flares with such frequency and intensity as to support a limitation to sedentary work," noting that Plaintiff consistently presented to her appointments with a normal gait and normal strength with intact strength without evidence of neurological comprise. (*Id.*) Regarding the physical ability to lift and carry, the ALJ acknowledged some findings of joint tenderness and reduced strength in the upper extremity but explained that the longitudinal record did not consistently reflect such findings that would warrant concluding that plaintiff could not lift 20 pounds occasionally and 10 pounds frequently. (*Id.*) Thus, "[a]fter consideration of all evidence, [the ALJ found Plaintiff] capable of performing light work." (*Id.*)

The ALJ's discussion of the relevant medical evidence, consideration of the prior administrative medical findings reflecting even greater capacities, and articulation of how the evidence supported the specific RFC limitations, provides sufficient information for the Court to trace the path of the ALJ's reasoning to his conclusion that Plaintiff could perform light work. *See Warnell*, 97 F.4th at 1054; *Nina Joyce H. v. Saul*, No. 18-cv-4913, 2020 WL 212771, at *7 (N.D. Ill. Jan. 14, 2020) (ALJ must cite to relevant evidence that adequately supports the RFC conclusion,

10

and an RFC will not be overturned where the ALJ thoroughly discusses the medical and other evidence and carefully considers the claimant's impairments and related functional deficits.). Here, the ALJ's RFC assessment complied with the regulations, agency rulings, and Seventh Circuit law, and the ALJ thoroughly explained the reasons for his conclusion that Plaintiff could perform the exertional requirements of light work. The Court finds the ALJ more than "minimally articulated" the reasoning behind his decision with substantial evidence. The Court will not overturn the ALJ's decision on this basis.

### 2. The ALJ Appropriately Assessed Plaintiff's Mental Limitations, Singly or in Combination

Next, Plaintiff argues the ALJ made an unsupported finding she could perform simple tasks, because he did not adequately consider the combined effects of her impairments. Specifically, Plaintiff argues that after determining she had no more than moderate limitations in any "paragraph B" criteria, "the ALJ offered no further insight into how he arrived at his mental RFC assessment." (Dkt. 15 at 13.) The Court disagrees.

While the Court acknowledges that the length of an ALJ's narrative does not necessarily "equate[] to cogent analysis and proper support" (Dkt. 22 at 4), here the ALJ's discussion of Plaintiff's mental functioning in his RFC analysis spanned *twelve* single-spaced pages, discussing at length her subjective complaints, her treatment history and corresponding improvement, her presentation at her numerous appointments, and her daily activities. (R. 3256-68.)

Indeed, the ALJ considered Plaintiff's testimony at both Administrative Hearings regarding her mental health issues, including her difficulties with stress, crying spells, and lack of energy. (R. 3257.) However, as he did with Plaintiff's allegations concerning her physical functioning, the ALJ concluded that her mental functioning allegations were not fully consistent with the record evidence. (R. 3258.) For example, the ALJ acknowledged that in April 2016 she was noted to have

11

a complicated psychiatric history with worsening depression. (R. 3261 (citing R. 388-89).) However, the ALJ noted that although Plaintiff occasionally presented with symptoms such as a depressed or anxious mood or distractibility during the relevant period, her mental status examinations were typically normal, including numerous findings of normal cognitive functioning, behavior, appearance, speech, thought process, insight, judgment, memory, and concentration. (R. 3261-63 (citing, *e.g.*, R. 416, 418, 422, 469, 531, 553, 1144, 1165, 1173, 1238, 1980, 2419, 2431, 2456, 2468, 2485, 2497, 2522, 2534, 2546, 2563, 2597, 2622, 2634, 2837, 2904, 3202, 3622, 5364)); *see Elizabeth G. v. Kijakazi*, No. 20-cv-1799, 2022 WL 326966, at *1 (N.D. Ill. Feb. 3, 2022) ("[c]omments from mental healthcare providers that a plaintiff is 'doing well' or her 'mental status is normal' or that she is 'very happy' do not tend to translate into a finding that the plaintiff is incapable of work."). The ALJ further explained that Plaintiff's allegations of debilitating symptoms were inconsistent with her ample daily activities, which included socializing with friends, attending church, going to yoga, attending choir practice, dining out with friends, outdoor walking, attending aquatics therapy, going to the library, and going on vacation. (R. 3262 (citing R. 502, 2803, 2862, 2924, 2965, 2989, 3035)); *see Regina P. v. Saul*, No. 19-cv-3155, 2020 WL 4349888, at *5 (N.D. Ill. Jul. 29, 2020) (an ALJ is "permitted to consider [the] mismatch between [the claimant's] daily activities and her symptoms description," and the Court will not reweigh the ALJ's consideration of those activities).

The ALJ next supported the RFC limitations in his discussion of the relevant opinion evidence and prior administrative medical findings. The ALJ gave "good weight" to the opinion of State agency psychological consultant David Gilliland, Psy.D., explaining that his conclusion Plaintiff could have limited interaction with others was consistent with the mental status examinations of record, and "considered his opinion in limiting [plaintiff] to no interactions with the general public and only occasional interactions with coworkers and supervisors." (R. 3264

12

(citing R. 97-99).) The ALJ found Dr. Gilliland's limitation to one-two step tasks inconsistent with her daily activities, which often required more than two steps,[4] and instead explained he considered her moderate limitations in understanding, remembering or applying information in limiting her to simple instructions and work-related decisions and her moderate limitations concentrating, persisting, or maintaining pace in prohibiting her work at a production rate pace. (R. 3264.) The ALJ also explained that although Dr. Gilliland found only mild limitations in Plaintiff's abilities to adapt or manage herself, he increased this limitation to moderate after a comprehensive review of the record evidence. (*Id.*)

The ALJ also explained why he afforded little to no weight to the remainder of the prior administrative medical findings and opinions in the record. Specifically, he afforded little weight to State agency psychological consultant Steven Fritz, Psy.D., explaining that his determination Plaintiff could perform complex instructions for multiple tasks of a routine and repetitive nature performed in a socially undemanding setting was not consistent with the evidence submitted after Dr. Fritz's finding was rendered. (R. 3264-65 (citing R. 81-83).) He gave less weight to Dr. Michael S. Easton, M.D.'s opinion,[5] explaining that his opinion Plaintiff could "no longer work" and experienced several work-preclusive limitations was inconsistent with Plaintiff's substantially normal mental status examination and course of treatment, and that Dr. Easton did not provide sufficient support for his checklist-type opinion. (R. 3265 (citing R. 920-23).) By way of example, the ALJ explained that although Dr. Easton opined to significant limitations with Plaintiff's memory, she typically had normal memory at her appointments and the ALJ then provided *over 60 direct citations* to the record. (R. 3265); *see Warnell*, 97 F.4th at 1054 (affirming where the ALJ

---

[4] Although facially this refence to multi-step daily activities seems a bit thin, the remainder of the ALJ's opinion saves it with a thorough discussion of Plaintiff's abilities.

[5] The ALJ incorrectly refers to Dr. Easton as Dr. Eaton, potentially because Plaintiff's counsel also made this same typo on the Mental Residual Functional Capacity Statement sent to Dr. Easton. (*Compare* R. 920 *with* R. 1142.) The Court uses Easton throughout this Memorandum Opinion and Order.

13

"highlighted specific evidence that contradicted [plaintiff's expert's] conclusions, going so far as to cite and describe discrete examination findings"). The ALJ further acknowledged Plaintiff's intermittent attention or concentration issues, preoccupations, and distractibility, but likewise provided *over 35 direct citations* to the record where Plaintiff demonstrated normal concentration, explaining that any concentration difficulties were addressed with the mental limitations included in the RFC.[6] (*Id.*) This was no mere brush upon the record; ALJ Studzinski thoroughly engaged with and considered this voluminous record, which spans over 6,000 pages.

Next, the ALJ explained that Scott Gibson, MSW (who opined Plaintiff had marked limitations and was unable to work in a competitive work setting) was not an acceptable medical source, and that he provided no support or explanation for his opined limitations (which were, in any case, inconsistent with the medical evidence of record). (R. 3265-66 (citing R. 2799-81).) The ALJ also afforded little weight to Plaintiff's rheumatologist, Padmanabhan Raghu, M.D., who also opined to numerous work-preclusive limitations, explaining that he provided no explanation for such limitations as frequently being off task, an inability to deal with work stress, the need lie down at unpredictable intervals, and absenteeism of three times per month. (R. 3266 (citing R. 1264-65).) Further, the ALJ explained (and again provided numerous citations to the record) that such limitations like significant difficulties with attention and concentration were not consistent with the numerous findings of normal concentration throughout the record. (R. 3266.)

Finally, the ALJ spent nearly an entire page explaining his decision to afford no weight to Faris Karimi, M.D.'s opinion that Plaintiff is unable to sustain work activity, would be absent for

---

[6] Specifically, the ALJ found that Plaintiff "cannot perform work requiring a specific production rate such as assembly line work, but can tolerate end of day quotas." (R. 3256.) This limitation inherently addresses Plaintiff's argument about moderate concentration, persistence, or pace limitation. *Shaun R. v. Saul*, No. 18-cv-4036, 2019 WL 6834664, at *7 (N.D. Ill. Oct. 24, 2019) ("Unlike a broad restriction to simple work, it should be easy to see how [limitations to assembly line production and jobs with a flexible pace] account for one whose concentration might wax and wane.")

more than six days per month, would be off task for more than 30% of the day, and would be precluded from performing most mental aptitudes for 15% or more of an eight-hour workday. (R. 3266-67 (citing R. 4652-65).) The ALJ explained that Dr. Karimi's opinion was drafted more than a year after the expiration of Plaintiff's date last insured, and that Dr. Karimi's own treatment notes reflected unremarkable mental status examination findings. (R. 3266-67.) Further, the ALJ explained that despite Dr. Karimi finding work-preclusive limitations in memory and concentration, Plaintiff was noted to have normal memory and concentration at most of her appointments. (*Id*.) The ALJ explained that such extreme limitations are inconsistent with Dr. Karimi's own conservative treatment of Plaintiff. (*Id*.) Finally, the ALJ noted that despite opining that Plaintiff experienced side effects, Dr. Karimi's treatment notes explicitly stated Plaintiff experienced no side effects. (*Id*.)

Against this backdrop, Plaintiff's contention that the ALJ did not explain the mental limitations found in the RFC is plainly inconsistent with the ALJ's decision. As detailed at length above, ALJ Studzinski fully evaluated the longitudinal record and explained precisely why Plaintiff's allegations were not fully supported and why the non-exertional limitations identified in the RFC addressed Plaintiff's supported symptoms. (R. 3261-68.)

Finally, the ALJ's decision makes clear he considered the combined effects of Plaintiff's impairments. Although the two references the Commissioner cites for this proposition are to boilerplate language within the ALJ's decision (*see* Dkt. 21 at 13), the ALJ's thorough consideration of the entire record and determination that Plaintiff did not have a debilitating combination of impairments, was no mere boilerplate. After its own review of the record here, including both ALJ's decisions, and both Administrative Hearing transcripts, the Court finds ALJ Studzinski, on the whole, engaged in a careful and thorough (and *de novo*) review of Plaintiff's claims. *See Katie P. v. Saul*, No. 19-cv-50078, 2020 WL 2468191, at *2 (N.D. Ill. May 13, 2020) ("The Government argues

15

that the ALJ, on the whole, engaged in a careful and thorough review. After reading the decision and the hearing transcript, this Court agrees."). As detailed above, the ALJ evaluated all relevant evidence of Plaintiff's functioning, from her treatment history, her presentation at her medical appointments, and her wide variety of daily activities. (R. 3261-68.) It is not enough for Plaintiff to simply argue, based on this same evidence, that a different conclusion should be reached. (Dkt. 15 at 14-16); *see*, *e.g.*, *Patricia T. v. Saul*, No. 19-cv-614, 2020 WL 2767580, at *6 (N.D. Ill. May 28, 2020) (an argument that an ALJ failed to consider a claimant's combination of impairments must be more than asking the Court to reweigh the evidence.); *Gina V. v. Kijakazi*, No. 20-cv-4009, 2022 WL 1457801, at *3 (N.D. Ill. May 9, 2022) (finding the 'combination of impairments' argument unavailing where ALJ offered clear analysis and claimant cannot explain what is not accounted for within RFC); *Cindy P. v. Kijakazi*, No. 20-cv-6708, 2022 WL 2802328, at *4 (N.D. Ill. July 18, 2022) ("While Plaintiff argues that the ALJ did not sufficiently assess her impairments in combination, the Court agrees with Defendant that Plaintiff's contention in that regard amounts to an invitation for the Court to reweigh the evidence.").

The Court will not reweigh the evidence as Plaintiff suggests. *Warnell*, 97 F.4th at 1052-53; *Anthony G. v. Saul*, No. 17-cv-4393, 2020 WL 439964, at *8 (N.D. Ill. Jan. 28, 2020) ("Claimant's argument can, in fact, be distilled to the following: he believes the ALJ should have weighed the evidence differently than he did. Yet this fundamentally misunderstands the Court's role here, which is not to reweigh the evidence or substitute its judgment for the ALJ's with respect to how the conflicting medical opinions should be balanced."). The Court will not remand this matter based on the ALJ's consideration of Plaintiff's mental limitations, alone or in combination.

**D.     Conclusion**

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence and contains the requisite adequate logical bridges between the evidence and his

conclusions. The Court declines to remand this matter. Therefore, Plaintiff's motion for summary judgment (Dkt. 15) is DENIED and Defendant's motion for summary judgment (Dkt. 20) is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

ENTERED: March 25, 2025

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge